n of Labor. Thank you. Good morning. Good morning. May it please the court, my name is Meredith Moriarty from the law firm of Smith-Hoke, and I represent the appellant, Wah Lin. I would like to reserve two minutes for rebuttal. This is a case where the appellant has produced written proof that her former supervisor, Ms. Taylor, not only harbored retaliatory animus but also interjected herself into the hiring process in order to ensure that Ms. Lin would not be hired in violation of Title VII. The email to which you allude was sent two years before the hiring action was relevant, right? It was two years before she was rejected. Yes, Your Honor. The emails were sent in 2011, and the actual employment decision was made in 2013. So you want us to believe that that was motivational in the failure to offer a job two years later to a different supervisor? There is a question of fact as to whether or not that email influenced Mr. Delahunty. There's also evidence that Ms. Taylor spoke to Ms. Maricello and Ms. Mattoon, who were also decision makers. She told them specifically to disqualify Ms. Lin from the position. She said that they would do what she said and they would not question her judgment. The Department of Labor's sole argument This is Judge Winter in New Haven. She had failed in the first job, which the defendant argues she was not qualified for the position. That not failing in the first job was a legitimate employment requirement, and that she just wasn't qualified for the higher job. Your Honor, the only evidence presented as to the official requirements for the job were to be reachable under the civil service list, fluent in both Chinese and English, and to have at least a high school diploma. Ms. Lin was reachable under the civil service list. She was fluent in both languages, and she had a master's degree. If prior experience as a senior employment security clerk was required, the Department of Labor could have made it a prerequisite for this job. It did not. Could they ignore the fact, as Judge Winter suggests, that she didn't do the first job well and lost that job because the errors kept piling up? First of all, Your Honor, appellant does not concede that she was a poor employee at the previous job. But that's not part of our case here. Correct, Your Honor. She lost that job because they found her wanting, correct? We do not concede that that is the reason for that employment decision. Since you're not contesting it, we have to take the Department of Labor's view of why she was fired. Well, we have contested it. However, the fact remains that that previous experience in that position was not a prerequisite for the LSR position. In fact, Ms. Mallory testified that anyone could walk off the street and be employed as an LSR. So that previous experience was not necessary. But do they have to be blind to her previous record with the agency? That would be kind of crazy. They had a record on this woman. They knew her. And you're telling me they couldn't even consider it? Well, Your Honor, the Department of Labor does have the ability to base its employment decisions based on which of the reachable and qualified applicants to hire. However, they made this decision before even determining whether or not to hire her. They decided to not even consider her. But didn't your client in the local Rule 7-1 statement, she agreed that Delahunty was responsible for making the final decisions with respect to canvassing and hiring. And Delahunty's declaration says that, in his view, an individual who is unable to perform the first position will be unable to perform the second, and that he learned before she ever filed her complaint, he learned in mid-2010, that she had made excessive amounts of mistakes and that she, whether it happened that way or not, what he learned, the decision-maker learned, was that she was failing in her first job. Doesn't that make it impossible for you to satisfy the but-for cause test? No, Your Honor. First of all, Mr. Delahunty was not the only decision-maker. While he may have been the final decision-maker, may have signed off on these things, we have produced evidence that there are many other decision-makers involved in the process, including Ms. Marcello and Ms. Matone, who were told directly from Ms. Taylor to not consider Ms. Lindt. Second, I'm trying to remember your question. Second, Mr. Brodsky, who is the Director of Personnel, stated specifically that her previous termination would have no bearing on her qualifications for the LSR position. He stated emphatically that, no, she could not be taken off the civil service list because she had been terminated, and that there was no basis to do so and there was no protocol for doing so. Mr. Delahunty's self-serving declaration is the only evidence that her role as a senior employment security clerk would have influence on the LSR position. If a non-moving party cannot rely solely on conclusory statements to defeat a motion for summary judgment, surely the opposite is true, and a moving party cannot rely solely on such conclusory statements to win a motion for summary judgment. Can I ask you whether, this is Judge Weather again, under McDonnell-Douglas, the requirements that somebody be qualified for a job, I had always thought of that as meaning whether they could do the job, not published job requirements. Your Honor, in Williams v. R.H. Donnelly, the court specifically stated that whether or not one is qualified for the position refers to the criteria the employer specified for the position. In Williams, the court found for the employer because the plaintiff did not fit the official criteria for the job, which was two to three years' experience. Here, once again, the specified requirements, the only evidence we have of the specified requirements are that the applicant be reachable under the civil service law, that they be bilingual, and they have a high school diploma. Ms. Lynn fit all this official criteria. If someone lived in China, they could apply for the job and declare they weren't willing to move, and the Department of Labor would have to hire them? Because they are qualified for the job. Certainly, if they're not willing to be present for the job, that would be... But why? They meet the requirements. They meet the published requirements. I'm not sure of the specific civil service... The job is a practical matter. Yes, Your Honor. However, the question of whether or not she could perform this job is a question of fact, and one that the jury should be able to determine based on her testimony. Thank you. Thank you. We'll hear from the Department of Labor. May it please the Court. Summary judgment was proper because plaintiff was not qualified for the LSR position. But you heard counsel say that there were only three qualifications, and she had them in spades. I heard her say that, and that is true with respect to the civil service law. Mr. Delahanty's criterion did not arise from the civil service law. It was his own honestly held criterion. There's no dispute, certainly no evidentiary dispute, that he did not honestly hold this criterion that was developed, quote, based on my experience, his experience as a worker in the Department of Labor for 25 years. What was that criterion? I'm sorry? What was that criterion that Mr. Delahanty held? That criterion at page 814 of the record was that if a person is unable to effectively perform in the lower level proving ground position of SESC, the clerk position, then that person will be unable to effectively perform in the higher level LSR job, which is the job we're talking about today. And my friends on the other side say that, well, that criteria is lacking because, in fact, there's more nuance and we really have to do a more surgical examination of the requirements of one job and the other. But the question is not whether that criterion was reasonable. The only question is whether that criterion was honestly held and fairly applied by Mr. Delahanty. And there's absolutely no evidence in the record suggesting that he ever wavered from that criterion. And now the other side says, well, one of the reasons there might not be such evidence, one of the reasons why this criterion appears only in the declaration, as she says, is because the declaration was filed after the close of discovery. Absolutely true. But two points on that. During discovery, in fact, all the way back in 2013, in connection with the first case, it surfaced that Mr. Delahanty had played a role in the decisional process. And then, again, during discovery in this case, prior to the close of discovery, in the Burkitt deposition and the Mallory deposition, Mr. Delahanty was identified as an individual with influence or who played a role in the decisional process with respect to hiring. So they were certainly on notice. Ms. Lynn's argument in response is that she had no notice of this additional criterion, and civil service is supposed to be a transparent process. Here are the requirements. I met the requirements. Now you're adding another requirement of which I am unaware and which seems unfair. Well, a couple of responses, Your Honor. I'm not sure I can do much better than to quote Judge Winter's colloquy with my friend on the other side, that DOL doesn't have to be blind to this sort of prior poor performance. And, in fact, Mr. Delahanty was not. But, you know, Your Honor's questioning was this criterion sprung on her? Was it transparent? There's really not much evidence in the record on that one way or the other. But the question is not whether one can say shame on DOL as a matter of the civil service law. That's not part of this case. The question is, under this Court's precedents like Thornley and the Williams case, was the criterion honestly held and fairly applied? And if you look at Delahanty's declaration, which is uncontroverted in the record, his own criteria that he developed based upon his experience was that failure in the prior job is essentially per se disqualifying for consideration in the latter job. And that's what makes all of the supposed comparative evidence that my colleague cites, Mr. Hsu and Mr. Tang, and their experience, simply not relevant here because the question is but for causation. And for those individuals, Hsu and Tang, and, frankly, for the rest of anyone who's ever been canvassed for this job, as far as the record reveals, there's no history of failure in that lower level proving ground SESC position. And if this was a motivating factor case, if this was not a retaliation case, but a discrimination case, a sex case, a race case, or the like, DOL might not be up here making the same argument. But as Your Honor, Judge Livingston pointed out, back to your decision in the Chen case, this is but for causation. So we have to ask the counterfactual question. Remove all the retaliatory animus from this case. What would have happened? And based upon the record, it's utterly implausible to think that Mr. Delahanty, applying his criterion, would have found Ms. Lin qualified and would have canvassed her, interviewed her, and hired her. And unless there are any further questions, thank you for your time. Thank you, counsel. Ms. Moriarty, you have two minutes for rebuttal. Thank you. The Department of Labor has stated that Mr. Delahanty's declaration was uncontroverted, and there was no other evidence that his personal criteria was not honestly held. We have contradicted that piece of evidence by Mr. Brodsky's testimony, which he stated directly that being fired from the Senior Employment Security Clerk position was not a disqualification for the LSR position. Ms. Mallory also backed him up on that statement. Therefore, Mr. Delahanty's evidence is in question. We have created a question of fact on that matter. Second, the Department of Labor has stated that there is no one else with a history of failure in the Senior Employment Security Clerk position similar to Ms. Lin. Well, Mr. Zhu had demonstrated that he was unable to perform the LSR position. In his first interview, he could not communicate in English. They stated that in his interview notes, and yet he was interviewed for a second time. They considered him a second time, even though he was patently unqualified based on those three qualifications that we know of, whether or not they're reachable, whether or not they're bilingual, and whether or not they have a high school diploma. The Department of Labor has not been precisely similarly situated because he'd never been in the Senior Employment Security Clerk position. Correct, Your Honor. However, he did prove that he would be unable to perform that job and did not fit the official qualifications. The Department of Labor has provided no evidence that Ms. Lin could not do the job except for Mr. Delahanty's self-serving declaration. If this Court finds that that is enough, what precedent would it set that a decision-maker can simply ignore the law and make a decision based on his personal prerogatives? Thank you. Thank you. Thank you both. Very interesting case. We're going to reserve decision on this. Because that is the last case on our calendar to be argued this morning, I'm going to ask the clerk to adjourn court. The court is adjourned. Thank you.